**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | | |
|---|---|---|
| **OMAR SHARIFF MATTOX,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **VS.** | : | **NO. 3:10-CR-00001 (CAR)** |
| | : | **NO. 3:12-CV-90148 (CAR)** |
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Proceedings Under 28 U.S.C. § 2255** |
| **Respondent.** | : | **Before the U.S. Magistrate Judge** |
| _____ | : | |

## RECOMMENDATION

Before the Court is Petitioner Omar Shariff Mattox's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Doc. 62. In the Motion, Petitioner contends that trial counsel was ineffective in four grounds based primarily on counsel's conduct during or after the sentencing hearing. Id. At the evidentiary hearing conducted by the Court, Petitioner attempted to interject a new fifth ground, alleging that trial counsel also was ineffective based on counsel's conduct before or during the plea hearing. Because Petitioner fails to establish that trial counsel rendered ineffective assistance regarding any of the four grounds properly presented in his Section 2255 Motion, and because Petitioner's newly proposed fifth ground is time-barred, it is **RECOMMENDED** that Petitioner's Section 2255 Motion be **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 14, 2010, a grand jury in this Court returned a two-count indictment against Petitioner. Doc. 1. Count One charged Petitioner with possession with intent to distribute more than 50 grams of crack cocaine, cocaine, and marijuana in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(A)(iii), 21 U.S.C. § 841(b)(1)(C), 21 U.S.C. § 841(b)(1)(D), and 18 U.S.C. § 2. Id. Count Two charged Petitioner with possession of a firearm during a drug trafficking crime

in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2. Id. On January 21, 2010, Petitioner appeared for his arraignment and initial appearance at which time he pleaded not guilty. Docs. 6, 8. The Court originally appointed attorney Catherine Leek of the Federal Defender's Office to represent Petitioner. Docs. 4, 14. On June 3, 2010, attorney James Smith entered his appearance as Petitioner's retained trial counsel. Doc. 24. With the assistance of his newly retained trial counsel, Petitioner filed a number of motions, including a motion to suppress. Doc. 27. The Court attempted to schedule a hearing regarding the motion to suppress between June 2010 and July 2010, but Petitioner withdrew the motion on August 18, 2010. Docs. 36, 37.

After negotiations, Petitioner and the Government entered into a plea agreement. Doc. 49. The plea agreement provided that: (1) Petitioner knowingly and voluntarily will plead guilty to Count One and Count Two; (2) Petitioner's guilty plea will subject him to a mandatory minimum sentence of 5 years and a maximum sentence of 40 years imprisonment for Count One and a mandatory minimum sentence of 5 years and a maximum sentence of life imprisonment for Count Two, to run consecutively; (3) the Court is not bound by any estimated sentencing range that Petitioner received from his attorney, the Government, or the Probation Office; (4) Petitioner will not be allowed to withdraw his guilty plea because he received an estimated sentencing range that differs from the sentencing guideline range calculated in his Presentence Investigation Report (PSR) and found to be correct by the Court; (5) the Court will not be able to determine the appropriate sentencing guideline range until after the PSR has been completed, and Petitioner will not be allowed to withdraw his guilty plea based on any objections to the PSR made by Petitioner; (6) the Court retains the authority under certain circumstances to impose a sentence that is more or less severe than the sentencing guideline range; and (7) Petitioner will waive any right to an appeal or other collateral review of his sentence in any Court. Id. at 2-5.

In exchange, the plea agreement provided that: (1) the Government will accept Petitioner's guilty plea in full satisfaction of all possible federal criminal charges that may have been brought against Petitioner; (2) insofar as Petitioner cooperates with the Government, the Government will notify the Court about the extent of Petitioner's cooperation; (3) the Government will consider whether Petitioner's cooperation, if any, pre-sentencing warrants the filing of a motion for sentence reduction for substantial assistance, pursuant to 18 U.S.C. § 3553(e) or Section 5K1.1 of the Sentencing Guidelines; (4) the Government will consider whether Petitioner's cooperation, if any, post-sentencing warrants the filing of a motion for sentence reduction for substantial assistance, pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure; (5) the Government will not use any self-incriminating information against Petitioner in accordance with Section 1B1.8 of the Sentencing Guidelines; and (6) insofar as Petitioner accepts responsibility, the Government will recommend that the Court apply the appropriate downward adjustment for Petitioner's acceptance of responsibility. Id. at 7-9.

The plea agreement also stipulated to the following facts giving rise to Count One and Count Two: A police officer initiated a traffic stop of Petitioner's vehicle on April 12, 2009. During the traffic stop, the police officer noticed that Petitioner was the only occupant of the vehicle, and the police officer smelled what he believed to be marijuana. When the police officer confronted Petitioner about the smell of marijuana, Petitioner began to stutter. The police officer requested backup. Once a second police officer arrived, Petitioner fled the scene in his vehicle. After a short pursuit with police, Petitioner stopped his vehicle and fled on foot. One of the police officers watched Petitioner throw a bag near a building after he exited his vehicle and began to run. The police officers eventually apprehended Petitioner. After retracing Petitioner's route with the assistance of a canine, the police officers located a bag containing 2.5 pounds of

marijuana near a building. The police officers also searched Petitioner's vehicle and found a bag of crack cocaine that had a net weight of 286 grams, two bags of cocaine, and a Taurus, Model PT111, 9mm caliber pistol, Serial Number TUA15926 in the center console. Petitioner subsequently admitted that he owned the drugs and that he possessed the firearm in relation to, and in furtherance of, his drug trafficking business as well as for personal protection. Id. at 9-11.

Petitioner and trial counsel initialed each page and signed the last page of the plea agreement. Id. at 1-12. By signing the agreement, Petitioner confirmed that he had fully read and understood the plea agreement and that he agreed to all of its terms. Id.

On July 6, 2011, Petitioner pleaded guilty to the two-count indictment as charged. Doc. 64. During the change of plea hearing, the Court concluded that Petitioner was "fully competent and capable of entering an informed plea" and that Petitioner was "aware of the nature of the charges and the consequences of the plea." Id. at 15-16. Because Petitioner's guilty plea was "a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense[,]" the Court accepted Petitioner's guilty plea and ordered that a PSR be prepared to assist the Court with sentencing. Id. at 16.

The Probation Office subsequently prepared a PSR, which was filed with the Court on September 17, 2011. Doc. 56. After finding that Petitioner was accountable for 1.3 kilograms of marijuana, 286 grams of crack cocaine, 28.6 grams of cocaine, and a firearm, the PSR concluded that Petitioner had a base offense level of 32. Id. at 5. Petitioner received a three-level downward adjustment for acceptance of responsibility. Id. at 6. The PSR also concluded that Petitioner had a criminal history score of 0, which placed him in a criminal history category of I. Id. at 7. Based on a total offense level of 29 and a criminal history category of I, Petitioner's advisory

sentencing guideline range was between 87 and 108 months for Count One and a mandatory consecutive sentence of 60 months for Count Two. Id. at 10.

On October 5, 2011, after reviewing the PSR and Petitioner's objections to it, the Court sentenced Petitioner to 87 months imprisonment for Count One and 60 months imprisonment for Count Two, to be served consecutively, for a total sentence of 147 months imprisonment followed by 4 years of supervised release. Doc. 65 at 11. During the sentencing hearing, the parties discussed Petitioner's unsuccessful attempts to provide substantial assistance and the possibility of one or more of Petitioner's attempts to cooperate coming to fruition post-sentencing. Id. at 7-8. The judgment was entered on October 11, 2011. Doc. 59.

On October 9, 2012, Petitioner filed his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 and his supporting Memorandum, which identified the following four grounds for relief: (1) ineffective assistance of counsel for failing to file an appeal after Petitioner specifically asked counsel to do so; (2) ineffective assistance of counsel for allowing Petitioner to be "wrongfully convicted and sentenced" to Count Two on the basis of conduct that is not considered criminal under 18 U.S.C. § 924(c); (3) ineffective assistance of counsel for failing to object to the weight of the drugs used to sentence Petitioner; and (4) ineffective assistance of counsel for allowing the Government to "breach the plea agreement" thereby causing Petitioner to be sentenced to Count One "based on the unconstitutional mandatory application" of the Sentencing Guidelines. Docs. 62, 62-1.[1]

On October 10, 2012, after an initial review in accordance with Rule 4 of the Rules Governing Section 2255 Proceedings, the Court ordered Petitioner to amend his Section 2255

---

[1] In his Section 2255 Motion and supporting Memorandum, Petitioner changes the order in which he lists grounds three and four. Docs. 62, 62-1. For ease of reference, this Recommendation follows the order set forth in Petitioner's supporting Memorandum.

Motion within 30 days "to include every unalleged possible constitutional error or deprivation entitling him to federal habeas corpus relief, failing which Petitioner will be presumed to have deliberately waived his right to complain of any constitutional errors or deprivations other than those set out in his initial habeas petition." Doc. 63. Petitioner did not amend his Section 2255 Motion within 30 days. The Government responded on November 26, 2012. Doc. 66. On January 14, 2013, Petitioner moved for an evidentiary hearing. Doc. 67. The Court granted the motion and appointed attorney Keith Fitzgerald to represent Petitioner on January 17, 2013. Docs. 68, 69. After several continuances, the evidentiary hearing took place on June 11, 2013. Doc. 78.

<u>EVIDENTIARY HEARING</u>

On June 11, 2013, the Court conducted an evidentiary hearing regarding Petitioner's Section 2255 Motion. Doc. 78. Both Petitioner and his retained trial counsel James Smith testified. The following factual findings are based on the testimony and exhibits introduced by the parties during the evidentiary hearing:

Smith became licensed to practice law in June 1974. Since June 1974, Smith has represented clients in an unspecified number of criminal cases in both state and federal court. Smith agreed that he could be described as a criminal defense attorney and that he previously has represented clients on drug-related charges. At the time he was retained to represent Petitioner, Smith also represented several accused drug dealers around Athens, Georgia.

Petitioner originally hired Smith to represent him on criminal charges filed in state court involving the same underlying events. Petitioner retained Smith because an unnamed public defender in state court had failed to obtain a bond for Petitioner. Smith successfully obtained a bond for Petitioner in state court before a grand jury in federal court indicted Petitioner on

January 14, 2010. Attorney Catherine Leek represented Petitioner at his arraignment and initial appearance in federal court before Smith filed his notice of appearance.

As Petitioner's retained trial counsel, Smith maintained steady contact with Petitioner. Smith remembered communicating with Petitioner frequently. Smith estimated that they spoke at least once each month. Petitioner never expressed any dissatisfaction to Smith about his inability to communicate with Smith. Even so, Smith acknowledged that he occasionally sent letters or telephoned Petitioner without receiving any response.

Smith recalled having numerous conversations about Petitioner's estimated sentencing range and the importance of Petitioner obtaining a motion for sentence reduction for substantial assistance. Smith described one particular meeting with Petitioner and the Government where the parties discussed the critical importance of cooperation because Petitioner faced a mandatory minimum sentence of 15 years imprisonment unless he obtained the benefits of a motion for sentence reduction. Before the change of plea hearing, Smith explored other potential defenses, such as filing a motion to suppress all evidence seized as a result of the traffic stop. Ultimately, however, Smith determined that the most effective way for Petitioner to obtain the lowest possible sentence was by pleading guilty, cooperating with the Government, and obtaining the benefits of a motion for sentence reduction for substantial assistance.

Petitioner had approximately 530 days between his initial appearance and the plea hearing to cooperate with the Government. To assist Petitioner, Smith contacted an unnamed individual on behalf of Petitioner. The unnamed individual introduced Petitioner to other unnamed individuals from Mexico that had been transporting cocaine. Although Petitioner claimed that he could have purchased cocaine from one of these unnamed individuals, Petitioner never performed any controlled buys. Petitioner stated that he did not perform any controlled

buys because the Government failed to supply him with the money necessary to do so. In light of Petitioner's unsuccessful attempts to provide substantial assistance, Smith and the Government discussed the possibility of a third party cooperating with the Government on behalf of Petitioner so that Petitioner could obtain the benefits of a motion for sentence reduction. The third party, however, also failed to provide substantial assistance. Because both Petitioner and the third party failed to provide the Government substantial assistance either before or after the sentencing hearing, Petitioner did not qualify for a motion for sentence reduction under Section 5K1.1 or Rule 35(b).

Nonetheless, Petitioner obtained a substantial benefit under the plea agreement because of a misunderstanding about the significance of the 286 grams of crack cocaine involved here. The plea agreement, which was filed on July 6, 2011, provided that Petitioner's guilty plea would subject him to a mandatory minimum sentence of 5 years and a maximum sentence of 40 years imprisonment for Count One and a mandatory minimum sentence of 5 years and a maximum sentence of life imprisonment for Count Two, to run consecutively. Under the more lenient statutory penalty provisions of the Fair Sentencing Act of 2010, which at the time were relatively new, the necessary quantity of crack cocaine to trigger the statutory mandatory minimum sentence of 120 months increased from 50 grams to 280 grams. See 21 U.S.C. § 841(b)(1)(A)(iii).

Because Petitioner here possessed 286 grams of crack cocaine, he qualified for the statutory mandatory minimum sentence of 120 months for Count One. The Government, however, negotiated the plea agreement under the misapprehension that Petitioner qualified for the statutory mandatory minimum sentence of 60 months set forth in 21 U.S.C. § 841(b)(1)(B)(iii), and not the statutory mandatory minimum sentence of 120 months set forth in

8

21 U.S.C. § 841(b)(1)(A)(iii). The Presentence Report also concluded that the mandatory minimum sentence was 60 months. As such, Petitioner successfully avoided the statutory mandatory minimum sentence of 120 months for Count One, which, in effect, allowed Petitioner to cut 60 months from his statutory mandatory minimum sentence for Count One.

Smith testified that he reviewed the plea agreement with Petitioner both on the telephone and in person before the plea hearing. Smith explained the terms of the plea agreement, including the plea agreement waiver, to Petitioner. Smith did not recall exactly when Petitioner initialed and signed the plea agreement, but Smith did recall answering every question that Petitioner had about the plea agreement. In addition, Smith reviewed the PSR with Petitioner both on the telephone and in person before the sentencing hearing. Smith explained the sentencing guideline range for Count One and Count Two to Petitioner. Smith also informed Petitioner that the sentencing guideline range was advisory but the statutory minimum sentence was mandatory. Based on his discussions with Petitioner, Smith believed that Petitioner understood both the plea agreement and the PSR. Smith never promised Petitioner that he would receive a maximum sentence of 10 years, and Petitioner never told Smith that he believed that the Court would sentence him to only 10 years. Smith testified that Petitioner never asked him to file an appeal and that he advised Petitioner that there were no issues to appeal.

By contrast, Petitioner repeatedly testified that he pleaded guilty because Smith told him that the Court would sentence him to only 10 years. Petitioner claimed that he received a copy of his plea agreement in the mail one day before the plea hearing and that the accompanying letter from Smith led him to believe that he would receive a maximum sentence of 10 years. According to Petitioner, Smith never explained the terms of the plea agreement, including the appeal waiver, to him. Petitioner recalled initialing and signing the plea agreement in the hallway

9

moments before the plea hearing. Petitioner alleged that Smith never reviewed the PSR, the sentencing guideline range, or the statutory minimum sentence with him. Petitioner testified that he never spoke to Smith after the sentencing hearing and that he never asked Smith to appeal.

After hearing the testimony at the evidentiary hearing and observing the demeanor of both witnesses, the Court finds that Smith's testimony is more credible than Petitioner's testimony. Petitioner testified at length about his lack of candor and acknowledged that he was not fully truthful with the Court during his plea and sentencing hearings. By contrast, there were no questions raised about Smith's candor.

There also were inconsistencies between Petitioner's testimony and the record, whereas Smith's testimony largely mirrored the evidence in the record. For example, Petitioner testified that he agreed to enter the plea because he believed that the Court would sentence him to only 10 years. Petitioner further testified that he could not recall any instance in which Smith, the Government, or the Court informed Petitioner that his sentence might exceed 10 years. Unlike Petitioner, Smith testified that he never promised Petitioner that he would receive a maximum sentence of 10 years. Smith recalled one specific meeting with Petitioner and the Government where the parties discussed the importance of cooperation because Petitioner faced an estimated mandatory minimum sentence of 15 years imprisonment if he failed to obtain a motion for sentence reduction. Petitioner submitted a letter from Smith, dated one week before the sentencing hearing, in which Smith states that Petitioner was "looking at a minimum 10 year prison sentence because of the firearm." Petitioner's Ex. 1, Doc. 76-1. Smith goes on to explain that "there is no way to reduce the sentence below the statutory minimum sentence of 10 years." Id. Nowhere in the letter does Smith say that the Court's sentence could not exceed the mandatory minimum. The record, including the plea agreement and the plea hearing transcript,

comports with Smith's testimony and undermines Petitioner's testimony that no one ever informed him that 10 years represented his statutory mandatory minimum sentence for Count One and Count Two.

Further, Petitioner's shifting allegations, as illustrated by the stark differences between what Petitioner alleged in his Section 2255 Motion and what Petitioner alleged at the evidentiary hearing, also cast doubt on his credibility. At the evidentiary hearing, Petitioner testified that he was guilty of Count One and Count Two and that he never asked Smith to file an appeal. Yet, in his Section 2255 Motion, Petitioner alleged that Smith was ineffective for allowing Petitioner to be wrongfully convicted and sentenced to Count Two and for failing to file an appeal after Petitioner asked Smith to do so. As such, Petitioner's testimony at the evidentiary hearing repudiates two of the four grounds in his Section 2255 Motion. Unlike Petitioner, Smith's testimony remained consistent throughout the evidentiary hearing.

In sum, the Court concludes that Smith's testimony is more credible than Petitioner's testimony based on Petitioner's admitted propensity for lying in past proceedings, various inconsistencies between Petitioner's testimony and the record, and Petitioner's shifting allegations during the pendency of his Section 2255 Motion.

<u>ANALYSIS</u>

In his Section 2255 Motion, Petitioner identifies four grounds for relief involving ineffective assistance of trial counsel primarily based on counsel's conduct during or after the sentencing hearing. Doc. 62. At the evidentiary hearing, Petitioner attempted to interject a new fifth ground for relief, alleging that trial counsel also was ineffective based on counsel's conduct before or during the plea hearing. Doc. 78. Because Petitioner fails to establish that trial counsel rendered ineffective assistance regarding any of the four grounds properly presented in his

Section 2255 Motion, and because Petitioner's newly proposed fifth ground is untimely, Petitioner's Section 2255 Motion should be denied.

**A.      Plea Agreement Waiver**

As a preliminary matter, the Court acknowledges that the Government sought to enforce Petitioner's waiver of right to appeal or collaterally attack his sentence. Doc. 66. The plea agreement waiver provides in pertinent part, "once this agreement is accepted and sentence is imposed by the District Court, [Petitioner] by this agreement forever waives any right to an appeal or other collateral review of [his] sentence in any court." Doc. 49 at 4. During the plea hearing, the Court confirmed that Petitioner read and understood the plea agreement waiver and that Petitioner freely and voluntarily waived his right to appeal his sentence. Doc. 64 at 9-11. Because the parties have addressed the merits of Petitioner's four grounds for relief, this Recommendation also addresses the merits of Petitioner's four grounds for relief. Even so, if the Court does not adopt the recommendation to deny Petitioner's Section 2255 Motion, in the alternative, the Court could dismiss the Section 2255 Motion based on Petitioner's waiver of right to appeal or collaterally attack his sentence as set forth in the plea agreement. See Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005) (holding that because the plain language of the plea agreement expressly informed the petitioner that he was waiving his right to bring a collateral attack, the petitioner waived his right to bring Section 2255 Motion).

**B.      Petitioner's Timely Grounds for Relief Lack Merit**

In his Section 2255 Motion, Petitioner alleges that trial counsel rendered ineffective assistance based on the following four grounds for relief: (1) failing to file an appeal after Petitioner asked counsel to do so; (2) allowing Petitioner to be "wrongfully convicted and sentenced" to Count Two on the basis of conduct that is not considered criminal under 18 U.S.C.

§ 924(c); (3) failing to object to the weight of the drugs used to sentence Petitioner; and (4) allowing the Government to "breach the plea agreement" thereby causing Petitioner to be sentenced "based on the unconstitutional mandatory application" of the Sentencing Guidelines. Doc. 62-1. For the reasons discussed below, relief is unwarranted on each of these four grounds.

1. Legal Standards

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance claim, "a petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521 (2003), citing Strickland, 466 U.S. at 687. To establish deficient performance, "Petitioner must show counsel's performance 'fell below an objective standard of reasonableness.'" Cook v. Warden, Georgia Diagnostic Prison, 677 F.3d 1133, 1136 (11th Cir. 2012), quoting Strickland, 466 U.S. at 688. To establish prejudice, "Petitioner must show that a 'reasonable probability' exists that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Cook, 677 F.3d at 1136, quoting Strickland, 466 U.S. at 697.

Petitioner must establish both prongs of Strickland in order to show that counsel rendered ineffective assistance. Morton v. Secretary, Florida Department of Corrections, 684 F.3d 1157, 1166 (11th Cir. 2012). The two-prong Strickland test applies to claims based on counsel's failure to file an appeal. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). The two-prong Strickland test also applies to challenges of guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). A petitioner claiming ineffective assistance in the context of a guilty plea must show not only that counsel committed objectively unreasonable professional

errors, but also a reasonable probability that, but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial. Id. at 58–59.

2. Ground One

The first ground for relief identified by Petitioner is that he received ineffective assistance of counsel when Smith failed to file an appeal after Petitioner asked him to do so, or in the alternative, when Smith failed to consult Petitioner about his appeal rights. Doc. 62-1 at 2-3. Because Petitioner fails to establish that Smith performed in a constitutionally deficient manner, his first ground for relief does not satisfy the first prong of the two-prong Strickland test.

The record in this case shows that Petitioner did not ask Smith to file an appeal. During the evidentiary hearing, Petitioner testified that he never requested that Smith file an appeal after the sentencing hearing. Doc. 78 at 19, 62. Petitioner conceded that he never wrote or telephoned Smith to request that Smith file an appeal. Id. at 64. Likewise, Smith testified that Petitioner never contacted him about filing an appeal. Id. at 72-74, 99-101. In addition, there is no evidence in the record tending to support Petitioner's allegation in his Section 2255 Motion that Smith did not file an appeal after Petitioner asked him to do so. Petitioner had ample opportunity to introduce evidence to bolster this cursory allegation during the evidentiary hearing, but he failed to do so. Instead, Petitioner repudiated his allegation that Smith failed to file an appeal after Petitioner specifically requested that he do so. In light of the undisputed evidence that Petitioner did not ask Smith to file an appeal, Petitioner does not satisfy his burden of establishing that Smith acted "in a professionally unreasonable manner per se" regarding his primary contention. Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005).

The record also fails to support a finding that Smith failed to consult with Petitioner about his appeal rights. Although Petitioner testified that Smith failed to consult Petitioner about

14

his appeal rights, Smith consistently testified that he consulted Petitioner about his appeal rights and that they specifically discussed the lack of any nonfrivolous issues to appeal because the Court sentenced Petitioner at the bottom of the sentencing guideline range and because the parties continued to explore the possibility of Petitioner obtaining a motion for sentence reduction for substantial assistance. Compare Doc. 78 at 19-20, with Doc. 78 at 97-101.

The evidence in the record, taking into account the credibility of both witnesses, supports a finding that Smith consulted Petitioner about filing an appeal after the sentencing hearing. In light of this factual finding, Petitioner does not satisfy his burden of establishing that Smith acted unreasonably by consulting with Petitioner regarding the advantages and disadvantages of appealing and advising Petitioner that his best course of action would be to continue pursuing a motion for sentence reduction for substantial assistance. See Gomez-Diaz, 433 F.3d at 792 (explaining that if an attorney consults with a client about his right to appeal, advises his client about the advantages and disadvantages of an appeal, and makes an effort to determine the client's wishes, the attorney only acts unreasonably if the attorney ignores the client's wishes to appeal).

Assuming for the sake of argument that the record could support a finding that Smith failed to consult Petitioner about his appeal rights, Petitioner fails to establish that Smith had a constitutionally imposed duty to consult with him about an appeal in this case. It is well-established that "[a] criminal defense lawyer is not under a per se constitutional obligation to consult with his or her client about an appeal. In some cases, the Sixth Amendment requires such consultation; in others, it does not." Otero v. United States, 499 F.3d 1267, 1270 (11th Cir 2007). Generally, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for

example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Devine v. United States, 520 F.3d 1286, 1288 (citation omitted). Among the "highly relevant" factors that a court examines when considering whether a duty to consult exists are (1) "whether the conviction follows a guilty plea," (2) "whether the defendant received the sentence he bargained for," and (3) "whether the plea agreement expressly waived some or all appeal rights." Otero, 499 F.3d at 1270 (citation omitted).

Smith testified that he was unaware of any nonfrivolous grounds that Petitioner might have to appeal and that he communicated this information to Petitioner after the sentencing hearing. Indeed, because the Court sentenced Petitioner at the bottom of the sentencing guideline range, and because Petitioner continued to pursue the possibility of a motion for sentence reduction for substantial assistance if either he or a third-party acting on his behalf cooperated, there was no reason to think that any rational defendant would want to appeal. Further, Petitioner did not reasonably demonstrate to Smith that he was interested in appealing because, as previously discussed, he never asked Smith to appeal. Based on all of the information available to Smith at the time, it appeared that Petitioner pleaded guilty knowingly and voluntarily and that the sentence imposed was much less than the sentence could have been had the Government understood the significance of the 286 grams of crack cocaine. Stated another way, Petitioner pleaded guilty, received the sentence for which he bargained, and executed a plea agreement waiver that expressly limited his ability to appeal or collaterally attack his sentence. Therefore, even if the Court assumes that Smith failed to consult Petitioner about his appeal rights, the record establishes that Smith did not have a constitutionally imposed duty to consult with Petitioner about an appeal under the circumstances of this case.

3. <u>Ground Two</u>

The second ground for relief identified by Petitioner is that he received ineffective assistance of counsel because Smith allowed Petitioner to be convicted and sentenced under Count Two for possession of a firearm during a drug trafficking crime on the basis of conduct that Petitioner now argues is not considered criminal under 18 U.S.C. § 924(c). Doc. 62-1 at 3-5. Because Petitioner fails to establish that Smith performed in a constitutionally deficient manner, his second ground for relief does not satisfy the first prong of the two-prong <u>Strickland</u> test.

The record, including Petitioner's testimony at the evidentiary hearing, undercuts Petitioner's contention in his Section 2255 Motion that he was wrongly convicted and sentenced for possession of a firearm during a drug trafficking crime on the basis of non-criminal conduct. Pursuant to the stipulation of facts in the plea agreement, Petitioner admitted that "he was in possession of the aforementioned Taurus, Model PT111, 9mm pistol, serial number TUA15926 in relation and in furtherance of his drug trafficking business as well as personal protection." Doc. 49 at 11. During the plea hearing, the Court confirmed that Petitioner understood the stipulation of facts and that the stipulation of facts in the plea agreement was accurate. Doc. 64 at 8-9. Petitioner also testified that he was guilty of both charges. <u>Id</u>. At the evidentiary hearing, Petitioner again testified that he was guilty of both charges, stating that "[n]o, that wasn't a lie about guilty of the charges. I was guilty of the charges. I'm still guilty of the charges." Doc. 78 at 46-47. When asked whether he was not guilty of Count Two, Petitioner responded, "[n]o, you said that. You asked me was I guilty of the charges and I told you yeah, I'm guilty of the charges. I'm not going to lie and say I'm not guilty." <u>Id</u>. at 55.

In light of the evidence in the record, including Petitioner's own testimony, there is no basis to conclude that Petitioner received ineffective assistance of counsel when Smith allowed

Petitioner to plead to charges that Petitioner concedes he committed. Petitioner had ample opportunity to develop evidence to support his second ground for relief at the evidentiary hearing, but he failed to do so. Instead, the evidence at the evidentiary hearing indicated that there was a firm factual basis for Petitioner's conviction and sentence to Count Two and that the terms of the plea agreement negotiated by Smith were favorable to Petitioner based on the amount of drugs, the presence of a firearm, and the opportunity for Petitioner to obtain downward departures for both acceptance of responsibility and cooperation with the Government. In comparison, Petitioner failed to "identify the acts or omissions [...] that are alleged not to have been the result of reasonable professional judgment" to "show that counsel's representation fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 687, 690. As such, Petitioner has not satisfied his burden of establishing "constitutionally deficient performance" concerning his second ground for relief. Lawhorn v. Allen, 519 F.3d 1272, 1293 (11th Cir. 2008).

   3.  Ground Three

   The third ground for relief identified by Petitioner is that he received ineffective assistance of counsel because Smith did not object to the weight of the drugs used to sentence Petitioner. Doc. 62-1 at 5-8. Because Petitioner fails to establish that Smith performed in a constitutionally deficient manner, his third ground for relief does not satisfy the first prong of the two-prong Strickland test.

   There is no basis to conclude that Smith performed deficiently by not objecting to the weight of the drugs used to sentence Petitioner because counsel "cannot be labeled ineffective for failing to raise issues which have no merit." Cave v. Secretary for Dep't of Corrections, 638 F.3d 739, 755 (11th Cir. 2011), quoting Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990).

Pursuant to the stipulation of facts in the plea agreement, Petitioner admitted that he threw a bag of marijuana near a building while fleeing from police officers and that when police officers searched his vehicle, they seized "a bag of crack cocaine which had a net weight of 286 grams, a couple bags of cocaine, and a firearm [...] inside the center console of the car." Doc. 49 at 10-11. Petitioner confessed that he owned the drugs in a post-Miranda statement. Id. at 11. The PSR established that Petitioner was accountable for 1.3 kilograms of marijuana, 286 grams of crack cocaine, 28.6 grams of cocaine, and a firearm. Doc. 56 at 5. Based on Petitioner's possession of 286 grams of crack cocaine, Petitioner could have faced a statutory mandatory minimum of 120 months for possession with intent to distribute more than 280 grams of crack cocaine under 21 U.S.C. § 841(b)(1)(A)(iii). Instead, pursuant to Petitioner's plea agreement, Petitioner only faced a statutory mandatory minimum of 60 months. Stated another way, the plea agreement negotiated by Smith halved the applicable statutory mandatory minimum for Count One.

Because Petitioner already had received the most beneficial statutory mandatory minimum available to him for possession with intent to distribute crack cocaine under 21 U.S.C. § 841(b), there was no reason for Smith to raise a meritless objection regarding the weight of the drugs, which had a firm factual basis in Petitioner's own admissions.[2] See Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."). As such, Petitioner has not satisfied his burden of establishing "constitutionally deficient performance" concerning his third ground for relief. Lawhorn, 519 F.3d at 1293.

---

[2] At the evidentiary hearing, Petitioner's appointed counsel acknowledged that Petitioner's third ground for relief "is pretty much baseless" because there was no objection that Smith could have made about the weight of the drugs used to sentence Petitioner. Doc. 78 at 5.

4. <u>Ground Four</u>

The fourth ground for relief identified by Petitioner is that he received ineffective assistance of counsel because Smith allowed the Government to breach the plea agreement, which caused the Court to sentence him "based on the unconstitutional mandatory application" of the Sentencing Guidelines for Count One. Doc. 62-1 at 8-11. Because Petitioner fails to establish that Smith performed in a constitutionally deficient manner, his fourth ground for relief does not satisfy the first prong of the two-prong <u>Strickland</u> test.

At the evidentiary hearing, both the Government and Petitioner's appointed counsel agreed that the Government did not breach the plea agreement and that Petitioner was given ample time to provide substantial assistance. Doc. 78 at 3-5. There is no evidence in the record, and there is no rational basis to argue, that the Government breached the plea agreement in this case. The plea agreement informed Petitioner about his statutory mandatory minimum sentence for Count One and notified him that the Court would not be able to determine the appropriate guideline sentence until after the PSR is completed. Doc. 49 at 3-4. The Court thoroughly reviewed the terms of the plea agreement, including the concept of statutory mandatory minimum sentences and advisory guideline sentences, with Petitioner. Doc. 64 at 6-14.

Petitioner misunderstands the record regarding his contention that the Court erroneously believed the sentencing guidelines to be mandatory regarding Count One and that Smith should have objected to the Court's mistaken belief during the sentencing hearing. During the sentencing hearing, the Court specifically determined that "the advisory sentencing range for Count One is 87 to 108 months considering an offense level of 29 and a criminal history category of 1. In imposing the sentence in this case, the Court has considered the sentencing factors found in 18 U.S.C. § 3553(a)." Doc. 65 at 10-11.

Because the Court did not sentence Petitioner based on an unconstitutional mandatory application of the sentencing guidelines, there was no reason for Smith to raise a meritless objection regarding the sentence imposed for Count One, which was at the bottom of the advisory guideline sentencing range. See Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."). As such, Petitioner has not satisfied his burden of establishing "constitutionally deficient performance" concerning his fourth ground for relief. Lawhorn, 519 F.3d at 1293.

## C.     Petitioner's Newly Proposed Ground for Relief Is Untimely

At the evidentiary hearing, Petitioner orally requested to amend his Section 2255 Motion to add a newly proposed ground for relief, namely that Smith also was ineffective based on counsel's conduct before or during the plea hearing. Doc. 78 at 5-6. The Government opposed the request, arguing that it was both untimely and unfair. Id. at 6-7. Because Petitioner failed to add his newly proposed ground for relief within the time period allotted, and because Petitioner failed to establish that his newly proposed ground for relief relates back to his Section 2255 Motion, Petitioner's fifth ground is time-barred and should not be considered at this late date.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") creates a strict one-year limitations period for all motions filed under 28 U.S.C. § 2255, such that Petitioner was obligated to file his Section 2255 Motion no later than one year after "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1).[3] In this case, Petitioner's judgment of conviction became final on October 25, 2011, which is fourteen days after the entry of the Court's judgment and when the time for filing a notice of appeal on the Court's judgment expired. See Murphy v. United States, 634 F.3d 1303, 1307 (11th Cir. 2011). As a result,

---

[3] Petitioner does not allege, and there is no reason to believe, that any of the alternative triggers for the one-year limitations period are applicable in this case. See 28 U.S.C. § 2255(f)(2)-(4).

Petitioner had to file his motion within one year of the date on which his judgment of conviction became final, or no later than October 25, 2012. Giving Petitioner the benefit of the "mailbox rule," it is appropriate to deem his Section 2255 Motion "filed" on October 4, 2012, the date on which Petitioner delivered it to prison authorities for mailing. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001). As a result, Petitioner's Section 2255 Motion was timely filed pursuant to 28 U.S.C. § 2255(f)(1).

Even so, Petitioner's newly proposed fifth ground for relief is untimely. After an initial review in accordance with Rule 4 of the Rules Governing Section 2255 Proceedings, on October 10, 2012, the Court ordered Petitioner to amend his Section 2255 Motion within 30 days "to include every unalleged possible constitutional error or deprivation entitling him to federal habeas corpus relief, failing which Petitioner will be presumed to have deliberately waived his right to complain of any constitutional errors or deprivations other than those set out in his initial habeas petition." Doc. 63. Petitioner did not amend his Section 2255 Motion before the 30 days elapsed on November 9, 2012. In fact, Petitioner made no effort whatsoever to amend his Section 2255 Motion prior to the evidentiary hearing on June 11, 2013. On the date of the evidentiary hearing, Petitioner's request to add a fifth ground for relief was 214 days out of time under the strict one-year limitations period of the AEDPA. See Day v. Crosby, 391 F.3d 1192, 1194 (11th Cir. 2004) ("A federal court that sits in collateral review of a criminal judgment [...] has an obligation to enforce the federal statute of limitations."); see also Jones v. United States, 304 F.3d 1035, 1039 (11th Cir. 2002) (explaining that to fulfill legislative intent federal courts must engage in "strict interpretation of the one-year limitation period for federal prisoners in § 2255."). As a result, Petitioner's newly proposed fifth ground for relief is time-barred unless it relates back to his Section 2255 Motion.

Federal Rule of Civil Procedure 15(c) governs whether an amendment to a habeas petition relates back to the date of the original petition. See Mayle v. Felix, 545 U.S. 644, 655 (2005) (explaining the relationship between Fed. R. Civ. P. 15(c) and habeas proceedings). Pursuant to Rule 15(c), an amendment may relate back to an "original pleading" when both the pleading and amendment arise out of the same "conduct, transaction, or occurrence." Fed. R. Civ. P. 15(c); see also Mayle, 545 U.S. at 655. An amendment to a habeas petition may relate back "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts." Mayle, 545 U.S. at 664. A new claim does not meet that standard and, thus, does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Id. at 650. Similarly, if the untimely claim arises from "separate conduct," it will not relate back to the timely claim. Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000). "The untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." Id.; see also Mayle, 545 U.S. at 656.

In this case, Petitioner's newly proposed fifth ground for relief does not relate back to the four grounds for relief asserted in his Section 2255 Motion. In his Section 2255 Motion, Petitioner argued that trial counsel was ineffective primarily based on counsel's conduct during or after the sentencing hearing. By contrast, at the evidentiary hearing, Petitioner attempted to interject a new fifth ground for relief, namely that trial counsel also was ineffective based on counsel's conduct before or during the plea hearing. Petitioner's fifth ground for relief, which challenges trial counsel's advocacy during the plea negotiation and plea entry phase, has nothing to do with Petitioner's first four grounds for relief, which challenge trial counsel's advocacy during the sentencing and post-sentencing phase. Because Petitioner's untimely new fifth ground

for relief "arose from separate conduct and occurrences in both time and type" when compared to his four timely grounds for relief, his untimely fifth ground for relief does not relate back to the date of his timely filed Section 2255 Motion. Davenport, 217 F.3d at 1346; see also Farris v. United States, 333 F.3d 1211, 1215 (11th Cir. 2003) ("[N]ew claims alleging different trial errors [are] not part of the same course of conduct, and, as such, [do] not relate back to the date of the appellant's timely filed § 2255 motion.").

CONCLUSION

Because Petitioner fails to establish that trial counsel rendered ineffective assistance regarding any of the four grounds properly presented in his Section 2255 Motion, and because Petitioner's newly proposed fifth ground is time-barred, it is **RECOMMENDED** that Petitioner's Section 2255 Motion be **DENIED**. In addition, and pursuant to the requirements of Rule 11(a) of the Rules Governing Section 2255 Proceedings, it does not appear that Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2255(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-484 (2000) (explaining how to satisfy this showing) (citation omitted). Accordingly, it is **FURTHER RECOMMENDED** that the Court **DENY** a certificate of appealability in its final Order.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the district judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 5th day of July, 2013.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge